# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER GLEASON** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 20-4135** |
| : | |
| **FIRSTRUST BANK et al.** : | |

McHUGH, J.                                                                                                                May 10, 2021

## MEMORANDUM

This case involves a business dispute between a resident of California and a resident of Florida, over control of an investment fund organized under Florida law. In December 2018, Christopher Gleason, one of the principal investors in a Florida LLC charged with managing that fund, sued Robert Marlin, another principal investor, in Gleason's home state of California. Marlin responded with counterclaims. On two occasions, Gleason moved the California court for injunctive relief, and twice he was denied, as the court found that he had not shown a probability of success on the merits. Trial was scheduled for October, 2020, but was postponed because of the COVID pandemic. After failing to prevail in the California court, Gleason filed virtually identical claims in this Court some 20 months later, and then voluntarily dismissed his California claims. The sole basis for jurisdiction here is a loan agreement with a Pennsylvania bank, Firstrust, that provides liquidity for the investment activities of the fund.

Defendant Marlin has moved to dismiss for failure to state a claim, or alternatively to stay this matter in deference to the pending state court action, where a jury trial is scheduled for December, 2021, under *Colorado River Water Conservation District et al. v. United States*, 424 U.S. 800 (1976). ECF 15. Given the advanced stage of the California case, it is not appropriate for this Court to insert itself into a dispute that has no substantive connection to Pennsylvania, particularly where the Plaintiff's maneuvers can only be viewed as forum-shopping. Having met

with no success in California, Gleason seeks to use the Bank's position as the Fund's lender as a foothold to start over in a different court. For the reasons set forth below, I will stay these proceedings pending the outcome of the California litigation, as I have concluded that abstention is warranted under *Colorado River*.

I.  **RELEVANT FACTS AND PROCEDURAL BACKGROUND**

By way of summary, in the background of this case is an investment fund that buys and sells tax delinquencies throughout the United States, MMGJV Fund 1 LLC ("the Fund").[1] First. Am. Compl. ¶ 8, ECF 8. The Fund is a Florida LLC with a principal place of business in North Carolina. Oral Arg. Tr. 14:16-25, 15:1-10, April 14, 2021, ECF 40. At issue is whether Gleason or Marlin has the legal right to control the activities of the Fund. In this Court, Gleason initially sued Marlin, seeking a determination of the right to control the Fund and also sued Firstrust Bank as its lender. Compl., ECF 1. In response to Marlin's motion to dismiss, ECF 7, Gleason then filed an amended complaint, again naming only Marlin and Firstrust. First. Am. Compl., ECF 8. When Marlin further moved to dismiss the amended complaint, Gleason then sought leave to file a second amended complaint, seeking to add the investment fund at the core of the dispute.[2] Mot. Leave to File Sec. Am. Compl., ECF 18.

---

[1] Gleason, aside from managing the Fund, is one of numerous investor-members. First Am. Compl. ¶ 6.

[2] That motion is pending and will be denied. Separately, the Bank sought to interplead the disputed property in an escrow account with the Court. ECF 24. The Court issued a Rule to Show Cause regarding the Bank's interpleader complaint, ECF 25, but the Bank sought leave to withdraw the complaint before any response had been filed (ostensibly due to Gleason's failure to drop his breach of contract claims against the Bank). ECF 45 (ECF numbers are not in sequential order because the Bank's letter was not initially docketed upon having been delivered to the Court). After waiting for Plaintiff's response, ECF 30, the Court granted the Bank's request and permitted it to withdraw its answer pending a resolution of this motion to stay. ECF 36. Currently, therefore, there is no pending interpleader complaint.

For practical purposes, the activities of the Fund are controlled by a separate entity Gleason has not sought to join, MMG12,[3] a second Florida-based LLC, with a principal place of business in California. First Am. Compl. ¶ 6. Gleason contends that under MMG12's Operating Agreement, he is the sole manager, the Chief Executive Officer and sole Board of Director. *Id.* ¶¶ 12-13. He further alleges that "as the sole manager of MMG12, Gleason has the sole and exclusive right to use, operate and control MMG12's assets in accordance with the terms of the Operating Agreement." *Id.* ¶ 12. Marlin, effectively a 60% member of MMG12, *id.* ¶ 16, claims that *he*, not Gleason, "has overseen [its] investment, direction, and strategy decisions," while Gleason has simply handled the day-to-day affairs. *Gleason v. Marlin et al.*, No. 56201800522303CUCOVT, Marlin's cross-complaint, Dkt. #95 at ¶ 1 (Cal. Super. filed Oct. 24, 2019); *see* Def.'s Mot. Abstain or Dismiss, Ex. 2, ECF 15-4.

In 2018, a dispute broke out over control of the companies, and Marlin accused Gleason of questionable dealings, including the transfer of assets to a competing entity. *Id.* ¶¶ 9-10, 22. As part of that dispute, Marlin contended that the agreement Gleason cited for his authority to act on behalf of MMG12 and the Fund had a phony signature page. *Id.* ¶ 9. According to Gleason, there was nothing more ominous than a business dispute over management of the Fund, leading Marlin "to threaten – without authorization or any proper basis – to interfere with the Fund's management if his desires were not met." First Am. Compl. ¶ 18. In the parallel California action, Gleason has maintained that Marlin's contentions about his lack of authority to control the Fund are nothing more than misrepresentations. *See Gleason v. Marlin et al.*, Gleason's Compl., Dkt. #1 (Cal. Super. filed Dec. 31, 2018); *see also* Def.'s Mot. Abstain or Dismiss, Ex. 1, at ¶ 19, ECF 15-3.

---

[3] At this time, Plaintiff Gleason, a California resident, is a 40% member of MMG12, and the Marlin Family Trust, of which Defendant Robert Marlin, a Florida resident, is the sole trustee, is a 60% member. First Am. Compl. ¶¶ 13, 16.

The Fund has a revolving, secured line of credit with Firstrust Bank,[4] which is secured by the tax liens purchased by the Fund. First Am. Compl. ¶¶ 8-9. Gleason and Marlin are both individual guarantors of the loan, and MMG12 is a corporate guarantor. *Id.* ¶ 10. At some point, Marlin advised the Bank of his dispute with Gleason, which led the Bank to declare a default on the Fund's loan in November 2018. *Id.* ¶ 23. A Forbearance Agreement suspended action on the default, as Gleason and Marlin addressed their differences, but it expired in June 2019. *Id.* ¶¶ 26, 28. Before it will clear the loan and release the collateral, the Bank seeks either an agreement between Gleason and Marlin, or a court order clarifying who has authority to act on behalf of the Fund by way of its operating company, MMG12. Oral Arg. Tr., April 14, 2021 at 12: 5-18. As stated at oral argument, the Bank's position is that "this is a dispute between Gleason and Marlin." Oral Arg. Tr. 29: 15-16.

A. Procedural history in state and federal courts

As stated at the outset, in December 2018, Plaintiff Gleason filed a lawsuit in California state court against Defendant Marlin (and his now-deceased wife). *See Gleason v. Marlin et al.*, Gleason's Compl., Dkt. #1; *see also* Def.'s Mot. Abstain or Dismiss, Ex. 1. That litigation is at an advanced stage. Gleason's California complaint described what was at the time the emergent situation with the Bank and the Fund—the Forbearance Agreement had been signed the previous month—and sought declaratory and injunctive relief against Marlin with regard to control of MMG12. *See id.* His claims against Marlin substantially reflect the claims for declaratory relief he has filed in this Court.[5] *See id.*; First Am. Compl. ¶ 53; *id.* at 22.

---

[4] Firstrust is organized under Pennsylvania law and maintains its principal place of business here. First Am. Compl. ¶ 2.

[5] For example, in California Gleason sought "a declaration that the Operating Agreement is a valid and enduring agreement . . . and is in fully force and effect . . . that Christopher Gleason has sole and exclusive right to use, operate and control MMG12's assets in accordance with the terms of the Operating

4

Days before the Forbearance Agreement was set to expire in June 2019, Gleason moved the California court for a preliminary injunction and appointment of a receiver in order to "prevent Marlin . . . from interfering with the management of MMG12 and the Fund, which is required to be managed and operated solely by MMG12." Pl's. Mot. for Appt. of Receiver and Prelim. Injunction, *Gleason v. Marlin et al.*, 2019 WL 9467550 (Cal. Super. June 27, 2019). That request was denied, with the court finding, in relevant part, that Gleason had "failed to prove a probability of success on the merits" and that "[a]t best, the evidence at this juncture is disputed as to the conflict between the parties - equity members of a Florida LLC with principal place of business in Ventura County - concerning management and control of the LLC." *Gleason v. Marlin et al.*, No. 56201800522303CUCOVT, 2019 WL 9467974, at *1 (Cal. Super. July 24, 2019).

The litigation in California continued to mature in the final quarter of 2019. For example, in October 2019, a few months after the expiration of the Forbearance Agreement, Defendant Marlin filed claims[6] seeking declaratory relief that MMG12's Operating Agreement is invalid, or in the alternative, "for a declaration that Robert Marlin has the sole and exclusive authority to act on behalf of MMG[12] and that Mr. Marlin has the sole and exclusive right to use, operate and control MMG[12]'s assets." *Gleason v. Marlin et al.*, Marlin's cross-complaint, Dkt. #95 at 9; *see* Def.'s Mot. Abstain or Dismiss, Ex. 2 at 9. In November 2019, Gleason filed additional claims,

---

Agreement." *Gleason v. Marlin*, No. 56201800522303CUCOVT, Gleason's Compl., Dkt. #1 at 7; *see* Def.'s Mot. Abstain or Dismiss, Ex. 1, at 7. Here, Gleason's prayer for relief similarly begins with a request for "[a] declaratory judgment . . . that Gleason is the manager of MMG12, which is in turn the manager of the Fund." First Am. Compl. ¶ 53; *see id.* at 22.

[6] As explained by Plaintiff's counsel at oral argument, in California state court, although what Marlin filed is called a "cross complaint" on the state court docket, what is called a "cross complaint" comprises "both what in Federal Court is called a cross claim and a counter claim." Oral Arg. Tr. 10:18-20; *see* Cal. Civ. Proc. Code § 428.10. Therefore, to avoid confusion, I referred to what Mr. Gleason filed as it would be titled in federal court.

requesting legal relief substantially similar to the relief he seeks in the instant case,[7] and requesting injunctive relief ordering Marlin to sign a payoff letter to terminate the Fund's loan with the Bank. *Gleason v. Marlin et al.*, Dkt. # 99 at 7; *see* Def.'s Mot. Abstain or Dismiss, Ex. 3 at 7, ECF 15-5.

In January 2020, the California court scheduled a three-day jury trial for October 2020. *Id.*, Dkt. # 115. As late as February 2020, a number of other investors in the Fund joined the case, and, along with Gleason, filed claims against Marlin, which, once more, substantially reflected the legal relief sought in the instant Complaint. *Id.*, Dkt. # 127-134; *see* Def.'s Mot. Dismiss, Ex. 4, ECF 15-6.[8] Once again, the California court denied Gleason's request for injunctive relief on the basis that he "failed to meet his burden of demonstrating a probability that he will succeed on the merits." *See* Order of February 14, 2020, *Gleason v. Marlin et al.*, Dkt. # 126.[9] It also found that Gleason had "failed to meet his burden of demonstrating imminent, irreparable harm in the form of waste to the business entities occasioned by Marlin's alleged refusal to sign necessary documents with lenders to terminate loan obligations." *Id.* In June 2020, the trial that had

---

[7] The claims included four counts against Marlin: Count I: (Interference with Contract and Prospective Economic Advantage); Count II (Breach of Fiduciary Duty); Count III: (Breach of Written Contract (Guaranty)—Third Party Beneficiary); Count IV: (Breach of Written Contract (Forbearance Agreement)). Def.'s Mot. Dismiss, Ex. 3 at 3-7. Those claims, and their supporting allegations, are substantially the same as the following claims in the instant Complaint: Count IV (Fraud), Count V (Negligent Misrepresentation); Count VI (Tortious Interference); Count VII (Breach of Fiduciary Duty; Count VIII (Breach of Contract (Guaranty)); Count IX (Breach of Contract (Forbearance Agreement)).

[8] Just as with the initial counterclaim filed by Gleason, the amended cross-claim included four counts: Count I (Interference with Contract and Prospective Economic Advantage); Count II (Breach of Fiduciary Duty); Count III (Breach of Written Contract (Guaranty)—Third Party Beneficiary); Count IV (Breach of Written Contract (Forbearance Agreement)). *Id.*, Dkt. # 127-134; *see* Def.'s Mot. Dismiss, Ex. 4.

[9] http://www.ventura.courts.ca.gov/CivilCaseSearch/ViewDoc/%7B3D94D2D1-322F-4F13-84ED-31F18E33DD4D%7D (last visited May 10, 2021).

originally been scheduled for October 2020 was postponed to December 2021. *Gleason v. Marlin et al.*, Dkt. # 144-45, 174.

Following the rescheduling of the October 2020 trial in California, and roughly 20 months after initiating that lawsuit, Plaintiff Gleason filed nearly identical claims against Marlin in this Court—and added the Bank as a second Defendant. *See* Compl., ECF 1. Shortly thereafter, in September 2020, Gleason and other investors of the Fund voluntarily dismissed their amended crossclaims in California—without prejudice. *Gleason v. Marlin et al.*, Dkt. # 158, 167; *see* Def.'s Mot. Abstain or Dismiss, Ex. 5, 6, ECF 15-7, 15-8; Pl.'s Resp. Opp'n 3. And, on January 8, 2021, just ten days after Defendant Marlin filed his initial motion to dismiss citing the pending litigation in California, Mot. Dismiss, ECF 7, Plaintiff Gleason voluntarily dismissed his remaining claim for declaratory relief against Marlin in California—again without prejudice. *Id.*, Dkt. # 176; *see* Def.'s Mot. Abstain or Dismiss, Ex. 7, ECF 15-9. In sum, in this court Gleason has essentially refiled his California claims against Marlin for legal and declaratory relief, while adding the Bank as a defendant.

Significantly, however, the issues raised by Gleason remain before the California court, as Marlin has asked for declaratory relief regarding "the [in]validity of the Operating Agreement" and of the relative "right and duties with respect to MMG" of both Marlin and Gleason. *Gleason v. Marlin et al.*, Marlin's cross-complaint, Dkt. #95 at ¶ 15; *see* Def.'s Mot. Abstain or Dismiss, Ex. 2 at ¶ 15.

I. **DISCUSSION**

"Consistent with the nonobligatory nature of the remedy [under the Declaratory Judgment Act], a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment . . .". *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

But where there are claims for both legal and declaratory relief, "a district court must [first] determine whether the legal claims are independent of the declaratory claims." *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017) (alteration to original). That is so because "[i]f the legal claims are independent, the court has a 'virtually unflagging obligation' to hear those claims, subject of course to *Colorado River*'s exceptional circumstances." *Id*. (internal citation omitted). For claims to be independent, they must be "alone sufficient to invoke the court's subject matter jurisdiction" and be subject to adjudication "without the requested declaratory relief." *Id.* at 228 (internal citation omitted).

Here, because the amount in controversy as to Defendants Marlin and the Bank exceeds $75,000, *see* First. Am. Compl. 22,[10] and the parties are diverse,[11] the claims are independent. *See* 28 U.S.C. § 1332(a). This matter is therefore appropriately analyzed under the abstention standard set forth by the Supreme Court in *Colorado River*. 424 U.S. at 817-20. "The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colorado River,* 424 U.S. 800). "The doctrine is to be narrowly applied in light of the general principle that 'federal courts have a

---

[10] I note that the Plaintiff does not disclose the amounts he is seeking against each Defendant individually. But he is seeking punitive damages as to a number of its claims against Defendant Marlin. *See* First Am. Compl. ¶¶ 86, 110, 124. The Third Circuit has instructed that "a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of plaintiff's claim is below the statutory maximum." *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) *superseded on other grounds by Marshall v. Marshall,* 547 U.S. 293 (2006). With regard to the Bank, regardless of the amount sought, the Court would therefore have supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

[11] As set forth above, Gleason is domiciled in California, the Bank is domiciled in Pennsylvania, and Marlin is domiciled in Florida.

strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Id.* (internal citation omitted).

*Colorado River* abstention requires a two-step inquiry. First, I must determine whether the state and federal actions are parallel. *See Nationwide Mut. Fire*, 571 F.3d at 307. If they are parallel, I must next decide whether abstention is proper by weighing the six factors set forth in *Colorado River* and its progeny. *See id.* at 307-08; *Colorado River*, 424 U.S. 800; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983). For the reasons set forth below, I find that the actions are parallel and that the controlling factors weigh in favor of abstention.

A. The State and Federal Actions are Parallel.

In determining whether to abstain under *Colorado River*, the threshold question is whether there is an ongoing, parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." *Nationwide Mut. Fire*, 571 F.3d at 307 (internal citation omitted). Importantly, the Third Circuit has "never required complete identity of parties for abstention." *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) (internal citation omitted).[12]

Here, the actions are parallel because the California state court has been called upon to answer what is essentially the fundamental question now before me: Who has authority to act on behalf of MMG12 and therefore the Fund—Gleason or Marlin? That singular issue—the respective rights and duties of Gleason and Marlin with regard to MMG12, and therefore with respect to the Fund—underlies nearly every one of Gleason's claims in this federal action. *See*

---
[12] I note that the Plaintiff cites *Yang v. Tsui*, 416 F.3d 199, 205 (3d Cir. 2005) for the proposition that "[p]arallel cases involve the same parties . . .". Yet *Yang* was decided prior to the Third Circuit's decision in *IFC Interconsult*, which clarifies that complete identity of parties has never been required. 438 F.3d at 306.

First. Am. Compl., Counts I-VII.[13] Put another way, ordering the relief that Gleason is seeking would necessarily require a threshold finding that Marlin's statements to the Bank were, in fact, misrepresentations because Gleason is, in fact, the manager of MMG12 and therefore of the Fund.[14] That remains the key issue to be decided in the California action.

In sum, the extent of Gleason or Marlin's authority to act on behalf of MMG12—and therefore the Fund—is the crux of the litigation, both in California and in this Court. That is true regardless of the fact that Marlin's claims are the only remaining claims in California. *See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 134 (3d Cir. 1988) (affirming stay of federal action in favor of a state court action, where the federal defendant was the plaintiff in the state court action). And that is true even though Gleason, who is the plaintiff in both cases, has added the Bank as an additional Defendant in this Court. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d at 306. Gleason's claims against the Bank, just like his claims against Marlin, ultimately derive from his purported authority to act on the Fund's behalf, an issue that is

---

[13] For example, in the pending federal Complaint, Gleason argues that his ability to bring this action on behalf of the Fund, in accordance with Fed. R. Civ. P. 17, derives from his role "as sole manager of MMG12, which in turn is the sole manager of the Fund." First Am. Compl. ¶ 6. Similarly, in seeking declaratory relief, Gleason avers that "[a]n actual, present and justiciable controversy has arisen between Gleason, as manager of MMG12, which in turn is the manager of the Fund," and Marlin and the Bank. First Am. Compl. ¶¶ 48, 52. Likewise, the majority of Gleason's legal claims against Marlin—including fraud, negligent misrepresentation, tortious interference, and breach of fiduciary duty—are predicated on the alleged misrepresentations Marlin made to the Bank regarding the extent of Gleason's managerial authority over MMG12 and the Fund. *See, e.g.* First Am. Compl. ¶¶ 77, 90, 103, 117.

[14] To that end, Gleason's prayer for relief opens with a request for "[a] declaratory judgment from this Court that Gleason is the manager of MMG12, which is in turn the manager of the Fund; that Gleason, in his managerial capacity, is authorized to cause the Fund to pay off the Loan per the Loan agreement." First. Am. Compl. 22.

pending determination in California.[15] *See* First Am. Compl. ¶ 35. Indeed, there is no way to resolve the issue as to the Bank without first resolving the issue between Gleason and Marlin.

Therefore, I find that the pending litigation in California state court is parallel. *Ingersoll-Rand*, 844 F.2d at 138 (finding cases to be parallel despite the fact that "the state-court litigation d[id] not precisely correspond with the federal"); *In re Hydrogen Peroxide Antitrust Litig.*, No. CIV.A. 05-666, 2006 WL 999955, at *3 (E.D. Pa. Apr. 11, 2006) (concluding that state court proceeding was parallel despite lack of identity of parties).

A. <u>The Colorado River factors weigh in favor of abstention.</u>

Now that I have determined that the actions are parallel, I must address the controlling factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16. Those factors, set forth in *Colorado River* and its progeny, include the following:

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Nationwide*, 571 F.3d at 308 (internal citation omitted). I note that "[n]o one factor is necessarily determinative," *Colorado River*, 424 U.S. at 818, and that "the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses Cone*, 460 U.S. at 16. Moreover, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise . . . is required." *Colorado River*, 424 U.S. at 818–19. As will be discussed below, the second,

---

[15] For example, Gleason seeks relief from the Bank on the basis of its alleged failure "to honor the Fund's attempt, *made through Gleason acting in his authorized capacity as manager of MMG12*, which in turn is the manager of the Fund, to pay off the Loan." First Am. Compl. ¶ 35 (emphasis added).

fourth, fifth, and sixth factors[16] together outweigh the obligation to exercise jurisdiction, and therefore counsel toward abstention.

With regard to the second factor, the federal forum in Pennsylvania is not a convenient one for Defendant Marlin, a Florida resident. Gleason argues that Marlin waived any objection to a Pennsylvania forum because of the existence of forum selection clauses in documents such as the Loan Agreement and the Forbearance Agreement between the Fund, the guarantors, and the Bank. *See* Loan Agreement, First Am. Compl., Ex. B, § 14.13, ECF 8-2; Forbearance Agreement, First Am. Compl., Ex. C, ECF 8-3; Guaranty Agreement, First Am. Compl., Ex. E, at 10, ECF 8-5. Substantively, those documents do not relate to the separate business dealings of Gleason and Marlin. But even if one assumes them to be controlling, they would not support Gleason's position here. For example, in the Forbearance Agreement (also titled "Third Amendment to the Loan Agreement"), although the forum provision extends to Marlin with respect to obligations he owes the Bank, it clearly states that the "agreement shall inure *solely to the benefit of Lender . . .*". First Am. Compl.., Forbearance Agreement, Ex. C, ECF 8-3, at 11 (emphasis added). Ironically, to the extent that Gleason now asserts that the Forbearance Agreement controls as between Gleason and Marlin, he would have violated it over a year ago when he requested that the California court order Marlin to sign a payoff letter terminating the Loan Agreement. *See Gleason v. Marlin et al.*, Dkt. # 99; Def.'s Mot. Abstain or Dismiss, Ex. 3 at 7. Although a controlling forum selection cause can be a factor weighing against abstention, *see Ingersoll*, 844 F.2d at 137, there is no such clause here.

---

[16] I note that the first factor is not relevant, as neither court has taken jurisdiction of property, and this is not an *in rem* proceeding. Nor is the third factor in favor of abstention met, since "the 'avoidance of piecemeal litigation' factor is met ... only when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997). Like the first factor, I find that it neither weighs in favor of, nor against, abstention.

As to the fourth factor, the California action was filed by Plaintiff Gleason approximately *twenty months* before he filed this action, and substantial progress has been made there. *See Moses Cone*, 460 U.S. at 21 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). The parties have conducted discovery, the court has ruled on various motions filed by both sides, including numerous requests from Plaintiff Gleason for preliminary injunctive relief, and a trial date is set. Def.'s Mot. Abstain or Dismiss 11. Indeed, the trial had been scheduled in California as of January 2020, *see Gleason v. Marlin*, Dkt. # 115, more than eight months before Gleason filed this second action, and a new trial date had already been assigned. *Id.*, Dkt. # 144-45, 174. The delay here is a far cry from the nineteen days deemed immaterial in *Moses Cone,* 460 U.S. at 21. This factor therefore weighs heavily in favor of a stay. *See Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas*, 309 F. Supp. 2d 652, 658 (M.D. Pa. 2004) (concluding that a six-month delay from the filing of an action in state court to the filing of a federal action was a "lengthy delay," which "frustrated efficiency concerns and weighed in favor of abstention").

Gleason attempts to excuse the delay as resulting from a sudden realization that complete relief could not be obtained in California because of the absence of the Bank. At argument, counsel made references to attempts to join the Bank in California, *see* Oral Arg. Tr. 22:15-18, but later corrected the record at the Court's invitation based upon his lack of familiarity with the California action.[17] Pl.'s Statement of Supp. Facts 2. This argument lacks any credibility. The Loan Agreement between the Bank and the Fund made clear that any action involving the Bank must be

---

[17] Marlin objects to Plaintiff's Supplemental Filing as going beyond the scope of what the Court allowed. *See* Def.'s Resp. Opp'n Pl.'s Supp. Statement of Facts, ECF 43. I agree that counsel failed to comply with the Court's limitations but will not strike the filing. Rather, I will consider it to the extent that it complied with my directive.

13

filed in Pennsylvania unless the Bank consents to jurisdiction elsewhere. As to the Forbearance Agreement, which binds Gleason and Marlin individually to a Pennsylvania forum in disputes with the Bank, it was signed in November 2018, yet Gleason continued to litigate in California for 20 months thereafter. Forbearance Agreement, First Am. Compl., Ex. C. And with a minimum of diligence, counsel could have readily determined that Firstrust—a regional institution whose marketing slogan is "Philly's Hometown Bank"—would be highly unlikely to be subject to jurisdiction in California. Finally, as discussed below, the Bank's participation is in no respect essential to a determination of the dispute between Gleason and Marlin.

As for the fifth factor, state law, not federal, controls this case. Aside from Gleason's two counts under the Declaratory Judgment Act—a federal statute that does not provide its own rule of decision—he has pleaded seven state law claims.[18] Moreover, with respect to the core question in this case—who has the right to control the actions of the Florida-based Fund—, Gleason's counsel conceded at oral argument that the issue is controlled by an operating agreement "that is not subject to Pennsylvania law." Oral Arg. Tr. 14:16-25, 15:1-10, April 14, 2021. There is no federal issue, and the case is not even subject to Pennsylvania law. *Id.* Acknowledging that "abstention cannot be justified merely because a case arises entirely under state law," *Ryan v. Johnson*, 115 F.3d 193, 199, I nonetheless find it relevant that Pennsylvania is a stranger to the underlying dispute.

As to the sixth factor—whether the state court will adequately protect the interests of the parties—the salient point is that Gleason filed suit in his home state of California and litigated the

---

[18] *See In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 624–25 (D.N.J.2015)("The Declaratory Judgment Act is a procedural vehicle that creates a form of relief; it does not create a cause of action courts may be compelled to enforce") *(citing Wilton,* 515 U.S. at 288).

14

case there for twenty months before withdrawing his claims. He can hardly claim the court of his choice in his home state will not protect his interests, and Marlin, who is indisputably a Florida resident,[19] asks me to abstain in favor of the California court. *See* Mot. Abstain or Dismiss. Gleason argues that the absence of jurisdiction over the Bank undermines his ability to obtain complete relief, but that argument carries little weight. First, as noted above, Gleason necessarily knew that the Bank could not be brought into the California case at the inception of that action but chose that forum anyway. *See* Pl.'s Statement of Supplemental Facts 2. Second, as already discussed, Gleason and Marlin's underlying business dispute over control of the investment vehicle is conceptually distinct from its borrowing agreement with Bank. Finally, any California judgment is enforceable under the Full Faith and Credit clause,[20] U.S. CONST. art. IV § 1, by a variety of means. And all the Bank seeks, in the absence of an agreement between Gleason and Marlin, is a judicial determination of the dispute, which it has represented it will honor. Oral Arg. Tr., April 14, 2021 at 12: 5-18.

In the background of this case is another pertinent factor, recognized though not yet formally adopted by the Supreme Court: the "vexatious or reactive nature of either the federal or the state litigation." *Moses Cone*, 460 U.S. at 36 n.20. There, the Court cited with approval *Calvert Fire Insurance Co.*, where the Seventh Circuit held that a "'defensive tactical maneuver' based on a contrived federal claim" justified a stay as "a means to deter vexatious use of the federal courts." *Id.* (citing *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1234–

---

[19] Marlin was in California at the inception of the state case. See. Def.'s Resp. Opp'n Pl.'s Supp. Statement of Facts, ECF 43. The parties dispute why he was there, with Marlin contending that it was only to provide medical care for his ailing wife, but there is no dispute that he is a Florida resident.

[20] Plaintiff's counsel conceded at oral argument that under the Full Faith and Credit Clause, I am obligated to honor such a judgment when it is entered. *Id.* at 11:8-15.

1236 (7th Cir. 1979), *aff'g* 459 F.Supp. 859 (ND Ill.1978)). In *Moses Cone* itself, similar principles were invoked by the Fourth Circuit. *Id.* The Supreme Court observed that such an approach "has considerable merit" in deciding "whether to defer to a parallel state litigation under *Colorado River*." *Id.* Here, the filing of this suit is both vexatious and reactive: vexatious because of the lengthy litigation Gleason commenced but now seeks to abandon in his home state, and reactive because this action was not filed until after Gleason suffered setbacks there.

Therefore, careful analysis of each of the *Colorado River* factors counsels me to stay this matter pending the outcome of the state litigation in California, where the rights and duties of Gleason and Marlin with respect to MMG12 and therefore the Fund remain squarely before the court by virtue of Marlin's claims, notwithstanding Gleason's voluntary dismissal.

## II. CONCLUSION

Based on my analysis of the *Colorado River* factors, this matter will be stayed pending the outcome of the litigation in California.

An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge
